## ORA T. SHOHONEY v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Division One, November 27, 1909.

1. **MOTION TO MAKE DEFINITE: Not Assigned in Motion for New Trial.** Error in overruling a motion to require plaintiff to make his petition more definite and certain, cannot be considered on appeal, unless the ruling is assigned as a ground for a new trial in the motion for a new trial.

2. ———: **Waiver.** The question of whether defendant, by answering over and going to trial, waives the error of the trial court in overruling his motion to make the allegation of the petition definite and certain, is discussed, both in the majority and dissenting opinion, but not decided, because the judgment is reversed on other grounds.

3. **REMOVAL TO FEDERAL COURT: Review.** If the defendant, on the record made, was entitled to a removal of the cause to the Federal court, that right being denied, it is preserved for the purpose of review, not only in the Supreme Court of the

State but also in the Supreme Court of the United States; and if a review makes it clear that the removal should have been allowed, the case will not be considered on its merits, but is already in the Federal court; for, it is not the order of the State court removing the cause that gives the Federal court jurisdiction, but it is the application for removal in the form prescribed by the act of Congress.

4. ————: **Application and Bond: Action of State Court.** If the petition for removal, read in the light of the pleadings in the case and the act of Congress, shows a proper case for removal, and the bond tendered is sufficient, it makes no difference what action the State court may take, or that it take any action, the cause is rightfully in the Federal court.

5. ————: **State Case.** The Federal court has no jurisdiction of a suit between two citizens of the same State on a cause of action arising within the State and under the laws of the State.

6. ————: ————: **Changed by Petition.** The defendant by his petition to remove the cause to the Federal court cannot so change plaintiff's cause of action as to bring it under the Federal law. Neither can a plaintiff so state his cause of action in his petition as to deprive defendant of the right to removal if the defendant by his answer or plea shows that he relies for his defense on an act of Congress or a provision of the U. S. Constitution.

7. ————: **Interstate Commerce: Intentionally not Pleaded.** The mere fact that a railroad company may be engaged in interstate commerce does not deprive it of the right to engage in intrastate traffic, or relieve it of the obligation to obey the laws of the State while so engaged. So that it is immaterial whether or not plaintiff's petition omits, intentionally or otherwise, to state that the defendant railroad company was engaged in interstate commerce at the time of the injury to him. The court will take judicial notice that it was so engaged.

8. ————: ————: **Injury Done Here.** If while operating its instrumentalities in this State, a railroad company should violate a law of this State to the injury of a person in this State, the cause of action would arise under the State law, not under an act of Congress; and when that is the case, the fact that the business of the company also included interstate transportation is immaterial in so far as the question of State or Federal jurisdiction is concerned.

9. ————: **Action at Common Law and Under Statute.** Where plaintiff's petition states a cause of action at common law that would be good if there had never been an act of Congress on the subject, or is bottomed on the law that requires a master

to furnish his servant a reasonably safe instrument with which to work and on the State statute which makes the defendant company liable for the negligence of the plaintiff's fellow-servant, and defendant's answer does not undertake to frame a defense under the act of Congress, the State court has jurisdiction, and the case cannot be removed to the Federal court.

10. ———: ———: Adroit Pleading: Exclusion of Evidence. Where plaintiff's cause of action is not based on the act of Congress, defendant's contention that his petition is skillfully drawn to avoid using terms that would give the Federal court jurisdiction yet enable the plaintiff at the trial to claim the benefit of the act of Congress, and therefore the cause should be transferred to the Federal court, will be disallowed; for, whatever may have been the design, since the petition states only a cause of action at common law, it would be error to permit plaintiff to take benefit of the act of Congress, either in his evidence, or instructions or argument, and if such error was committed at the trial it can be corrected on appeal. Such contention or error does not go to the point of jurisdiction.

11. ———: Former Removal: Res Adjudicata. Where plaintiff's first suit was bottomed on the act of Congress and after its removal to the Federal court, and his motion to remand was overruled, was dismissed, he is not barred from bringing a suit in the State court bottomed on the common law. That was not *res adjudicata* of the question of jurisdiction.

12. ———: ———: ———: Overruling Motion to Remand: Dismissal. The order of the Federal court overruling in the former suit plaintiff's motion to remand and plaintiff's dismissal thereupon of that suit without appealing from that order, did not and cannot give that court jurisdiction of the subsequent suit, if the Federal court does not in fact have jurisdiction of this. Consent of parties cannot give jurisdiction where the law has not conferred it, and the question of a court's jurisdiction of the subject-matter is never settled until it is settled right.

13. NEGLIGENCE: Reasonably Safe Instrument. However clumsy or inconvenient the implement furnished by the master may be, he is not to blame if it is reasonably safe; and though a road engine is not as convenient or well adapted to switching work as a switch engine, yet if there is nothing in the evidence tending to show that the road engine which was being used when plaintiff was endeavoring to couple cars on the sidetrack was not reasonably safe when handled with ordinary care, plaintiff cannot recover for his injuries upon the charge that the engine was a road engine or was not reasonably safe.

14. ———: ———: **Suitable.** The term "suitable appliances," used by some law-writers, means compatible with safety. The evidence cannot stop with a showing that the road engine used was not as "suitable" for switching purposes as a regular switch engine, but it must go further and show that it was not reasonably safe when handled with ordinary care.

15. ———: ———: **Instruction Without Evidence.** It is error to give an instruction authorizing a verdict for plaintiff if there is no evidence upon which to base it. It was error to give an instruction authorizing the jury to find for plaintiff, who was injured while attempting to make a coupling between an engine with a Leeds coupler and a car with a Tower coupler, if they should find that the coupler attached to the engine was defective "by reason of not having sufficient lateral play or movement to enable it to conform to the other couplings to which the same was undertaken to be coupled," where all the evidence shows that the Tower coupler on the car did have such lateral movement, and that plaintiff did not undertake to make use of that coupler, and would not have made use of the Leeds coupler on the engine even if it had had such lateral movement.

16. ———: **Act of Congress: Not Pleaded: Evidence and Instructions.** Since plaintiff did not plead the act of Congress, requiring railroads engaged in interstate commerce to use automatic couplers that will couple by impact without requiring switchmen to go between the cars, as the basis of his action, he should not be permitted to go outside of the pleading, in either his evidence to show, or his argument to the jury to complain, that the automatic coupler which caused the injury did not couple automatically, or to otherwise invoke that law as a reason for his recovery.

17. ———: ———: ———: **Leeds Coupler: Abandonment: Instruction.** The fact that the act of Congress has forced the railroads engaged in interstate commerce to abandon the Leeds coupler, since it does not couple automatically, does not justify a court, while trying a cause of action arising under the common law, in instructing the jury that, if the evidence shows that the Leeds coupler had been generally abandoned, without anything to show why, they may take that fact into consideration in determining whether or not it was safe. Evidence of a general abandonment of a mechanical device in favor of another is competent on the question of safety only when it was abandoned for that reason.

18. **ERRONEOUS EVIDENCE: Objection Sustained: New Trial.** Where erroneous testimony reached the jury and the thought was planted in their minds and could not be eradicated by a

mere sustaining of an objection thereto, and the trial judge is conscious that the case has been decided contrary to his directions, his only recourse is to grant a new trial.

19. REVERSAL: Retrial on Another Issue.   Although the verdict cannot stand on the issue of the act of negligence submitted to the jury, yet if another act not submitted was alleged and there was evidence tending to sustain it, the cause will be remanded and plaintiff will be entitled to a retrial on that issue.

Appeal from Grundy Circuit Court.—*Hon. Geo. W. Wanamaker,* Judge.

REVERSED AND REMANDED.

*Hall & Hall, J. G. Trimble* and *Willard P. Hall* for appellant.

(1)  This case is removable to the Federal court and defendant's petition for removal should have been sustained.   The coupler on the front of the engine, under the allegations of plaintiff's petition, was within the prohibition of the Safety Appliance Act of the United States; defendant's railroad was engaged in interstate business; the car being coupled was billed from a point in Missouri to Omaha, Nebraska, and was in the actual course of transportation at the time; and, insofar as concerns said coupler upon the engine, the case was within said Safety Appliance Act.   It was not necessary for plaintiff's petition to plead said act.   The case was within the act the same as if it had been expressly pleaded in the petition.   Voelker v. Railroad, 116 U. S. 867; Railroad v. Texas, 72 Tex. 404; Miller v. Railroad, 83 Tex. 518; Hobbs v. Railroad, 9 Heisk. 873; Railroad v. Black, 87 Tex. 160; Hart v. Railroad, 6 W. Va. 336; Henen v. Railroad, 17 W. Va. 899; Bishop v. Insurance Co., 85 Mo. App. 302; McGrew v. Railroad, 177 Mo. 533; 17 Ency. of Law, 944; 16 Ency. Law and Proc., 861.   (2)  Defendant's motion to make the petition definite and certain

should have been sustained. Sidway v. Land Co., 163 Mo. 342. (3) The trial court should have given defendant's instruction in the nature of a demurrer to the evidence. On plaintiff's own testimony he was guilty of such contributory negligence as absolutely to preclude him from recovery, and the court should have given the instruction asked by defendant whereby it was so declared. State v. Turlington, 102 Mo. 663; State v. Bryant, 102 Mo. 32; State v. Anderson, 89 Mo. 332. It is firmly settled in this State that even where defendant has violated a statutory duty it can avail itself of the plea of contributory negligence. Huss v. Bakery Co., 210 Mo. 44; Durant v. Coal Co., 97 Mo. 66. (4) Plaintiff's instruction 1 was erroneous in that it submitted to the jury an issue not raised by the petition, to wit, that the Leeds coupler was unsafe for switching purposes, "by reason of not having sufficient lateral play or movement to enable it to conform to the other couplings to which the same was being undertaken to be coupled and to couple therewith."

*A. G. Knight, E. R. Sheetz* and *E. M. Harber* for respondent.

(1) It is now settled that the State court cannot be compelled to give up jurisdiction in a cause properly recognizable by it simply because a defendant corporation may assert and even find some one with sufficiently easy conscience to make affidavit that "said action arises under the laws of the United States." The test of the right of removal is, does the plaintiff's cause of action as made by his petition present a case arising under the laws of the United States? It is not sufficient to authorize such removal that some act of Congress, Constitution, laws of the United States, may become incidentally involved or even that a construction thereof be required in the progress of the trial, but the question here is, does the plaintiff's action as

made by his petition present a case arising under the laws of the United States? Greenly v. Railroad, 122 N. C. 977; Troxler v. Railroad, 124 N. C. 189; Fleming v. Railroad, 131 N. C. 476; Mather v. Rillston, 156 U. S. 391; Crawford v. Railroad, 10 Am. Neg. Rep. 166; Bond v. Railroad, 106 Mo. 429; Minnier v. Railroad, 167 Mo. 112; Smith v. Fordyce, 190 Mo. 1; Gibson v. Railroad, 46 Mo. 163; Crane v. Railroad, 87 Mo. 588; Hamilton v. Railroad, 123 Mo. 619; Railroad v. Carson, 24 Sup. Ct. Rep. 610; Railroad v. Flipp, 35 So. (Ala.) 45; Railroad v. Winkler, 36 Atl. (Del.) 112. (2) (3) The petition is broad enough to conform to the evidence adduced as to defective construction and make. Railroad v. Probst, 85 Ala. 203; Railroad v. Morgan, 132 Ind. 430. Plaintiff does allege the failure to furnish a reasonably safe and suitable engine and one properly equipped with couplers in common and general use, and it matters not to this defendant how or why the railroad companies of this country discarded the old style couplers which had been so generally condemned; the plaintiff complains that he was compelled to use a road engine instead of a switch engine which is customarily provided and adapted for switching purposes and which the evidence shows is provided with couplings which would not have required plaintiff to have placed himself between the cars and thrust the couplings in position for coupling by impact. Gibson v. Railroad, 46 Mo. 163; Crane v. Railroad, 87 Mo. 588. The general rule is that the master's negligence is a question for the jury whenever it is warrantable to infer from the evidence that the injury would not have been received if a certain instrumentality had been substituted for that actually adopted by the defendant, and that this alternative instrumentality was one commonly used by other employers in the same line of business under similar circumstances. Labatt on Master and Servant, sec. 52; Eastman v. Railroad, 101 Mich. 597;

Swizel v. Odanoh Iron Co., 116 Mich. 149; Cossolmon
v. Dunfer, 69 N. Y. Sup. 271; Flaherty v. Norwood
Eng. Co., 172 Mass. 134; Keller v. Schwenk, 151 Pa.
505; Railroad v. Bundy, 152 Ind. 590; Bennett v. Rail-
road, 2 N. D. 112; Palmer v. Railroad, 12 Fed. 392;
Jensen v. Hudson Sawmill Co., 98 Wis. 73.   (4)   The
instructions given on behalf of plaintiff are carefully
drawn and in no wise depart from the allegations of
the petition; if the petition states a cause of action,
unquestionably these instructions are beyond criticism.
(5)   Plantiff did not assume the risk of injury. Thorpe
v. Railroad, 89 Mo. 650; O'Hare v. Railroad, 95 Mo.
662., And the question of plaintiff's contributory neg-
ligence was a jury question.   Edington v. Railroad,
204 Mo. 61; O'Hare v. Railroad, 95 Mo. 662; Black v.
Railroad, 172 Mo. 177; Kennedy v. Railroad, 190 Mo.
424; McGuire v. Railroad, 128 Mo. App. 677; Thomp-
son v. Railroad, 86 Mo. App. 141; Harvey v. Railroad,
80 Mo. App. 667.

VALLIANT, J.—This cause was heard at the last
term of this court and a judgment was then rendered
reversing the judgment of the trial court and remand-
ing the cause for a new trial.   But in going over the
case again on the motion for rehearing it was noticed
that the action of the trial court in overruling defend-
ant's motion to require the plaintiff to make his peti-
tion more definite and certain, was not mentioned in
the motion for a new trial, although exception thereto
was otherwise duly preserved, and we thought the
point was sufficiently doubtful to require a rehearing
of the case, therefore the motion for rehearing was
sustained.

In the opinion delivered at the last term it is stat-
ed that before answering, the defendant filed a motion
to require the plaintiff to make his petition more defi-
nite and certain, that the motion was overruled, that
defendant excepted and the exception was duly pre-

served in the bill of exceptions. In the motion for rehearing it was said that there was no such motion filed and that there was no exception whatever taken to the overruling of the motion. The plaintiff in making that statement that there was no such motion filed was mistaken. The filing of such motion and the ruling of the court thereon can be shown only by entries in the record proper; the printed record before us on page 23 shows the entries in the record proper, showing that this motion was filed and that it was overruled by the court and that after the motion was overruled the defendant filed its answer. The motion itself appears in full in the only place it should appear, that is, in the bill of exceptions, as shown on pages 27 and 28 of the record, and the exception to the action of the court in overruling the motion also appears in the only place it should appear, that is, in the bill of exceptions, as will be seen by reference to page 28 of the record. The language of the bill of exceptions on this point is: "Which said motion was by the court taken up, considered, heard and overruled and to the action of the court in overruling said motion the defendant at the time saved its exception." Plaintiff therefore was mistaken when he said in his motion for rehearing that there was no such motion filed, no such motion overruled and no exceptions whatever taken to the ruling.

The ruling on a motion to require the plaintiff to make his petition more definite and certain occurs before the trial, and it may be at a former term, when exception thereto can be preserved only by a term bill of exceptions. Whether it is necessary or proper to bring it to the notice of the trial court again in a motion for a new trial is a question that some of our decisions have rendered a little doubtful. In Boatmen's Bank v. McMenamy, 35 Mo. App. 198 l. c. 203, the court said: "A motion to strike out part of a

pleading is not part of the record, and the court's ruling on such motion must be excepted to, and the exception preserved, both in the motion for new trial and by the bill of exceptions and unless done by both the exception is lost." As authority for that ruling the court cites the following cases: Cowen v. Railroad, 48 Mo. 556; Saxton v. Allen, 49 Mo. 417; Margrave v. Ausmuss, 51 Mo. 568; Carver v. Thornhill, 53 Mo. 283; Curtis v. Curtis, 54 Mo. 352; Lancaster v. Ins. Co., 62 Mo. 121; McCoy v. Farmer, 65 Mo. 247; Acock v. Acock, 57 Mo. 156.

It is noticed that in the above case cited from the Court of Appeals there is no discussion of the question but the decision rests solely on the authorities cited, and taking the cases cited in the inverse order of their citation, they run back for authority to the earliest case or to cases based on the earliest and decide the point as on that authority. In the first case, Cowen v. Railroad, the point was an alleged error in admitting testimony, and so it was in the second case, Saxton v. Allen, and also in the third, Margrave v. Ausmuss, and again in the fourth case, Carver v. Thornhill. In Curtis v. Curtis the appeal was from an order of the court allowing the wife alimony *pendente lite,* which of course was a trial of that issue. In the case next in line, Acock v. Acock, it appears that on motion a part of the petition was stricken out, and this court after otherwise disposing of the cause on its merits said: "The action of the court in striking out a part of the plaintiff's petition we will not review. It was not embodied as one of the errors or points insisted upon in the motion for a new trial and therefore must be disregarded." Citing Curtis v. Curtis, supra, and cases there cited. In that case it does not appear that there was an exception taken in any form to the striking out a part of the answer. In Lancaster v. Ins. Co., supra, what the court said in reference to the necessity of assigning the error in the motion for a new trial was in

reference to the introduction of the testimony. In the latest case cited by the St. Louis Court of Appeals in the case first above mentioned, McCoy v. Farmer, 65 Mo. 244, the suit was begun by a corporation as plaintiff, but pending the suit the life of the corporation expired and on application of the last board of directors the suit was revived in their names as trustees. They filed a new petition stating *inter alia* the expiration of the corporation and that they were the last board of directors and entitled as trustees to prosecute the suit; the defendants answered that petition and denied those allegations. Those facts were therefore in issue at the trial and any adverse ruling of the court occurring during the trial on those issues should of course have been brought to the attention of the court in the motion for a new trial, which was not done, and for that reason this court said they would not be considered.

Those are all the decisions of this court to which our attention has been called that can in any way be claimed to be authority for the proposition that the rulings of the trial court on motions preliminary to the trial must be embodied in the motion for a new trial, and, as we see, nearly if not all of those cases relate to the admission of evidence at the trial or relate to points that arose in the trial. The chief reason for requiring rulings complained of to be embodied in a motion for a new trial is that the trial court should be afforded an opportunity to correct its own error, if error there be, and also to apprise the opposite party of what is complained of. But that reason is not of universal application, for example, the appellate court will review the ruling of the trial court on a demurrer which appears on the face of the record proper, although there be no exception. [Spears v. Bond, 79 Mo. 467; Hannah v. Hannah, 109 Mo. 236; Meissner v. Railway Equipment Co., 211 Mo. 112.] In St. Louis v. Brooks, 107 Mo. 380, it was held that a motion for new trial

or rehearing on the ruling of the court on a motion after final judgment was not necessary.

In Crossland v. Admire, 118 Mo. 87, the court said: "A motion for a new trial must be predicated upon some error committed in the trial by which the verdict or finding was improper." In Rigdon v. Ferguson, 172 Mo. 49, the defendant's answer had been stricken from the files and there was a judgment for the plaintiff. Defendant filed a motion for a new trial; the only grounds stated in the motion were that the court erred in refusing leave to file the answer and in striking it from the files. This court said: "If exception was not otherwise preserved to the action of the court in refusing leave to file the answer, it was not saved in the exception taken to the action of the court in overruling the motion for a new trial. A motion for a new trial relates only to that which occurred during the trial. The ruling on the application for leave to file the answer was no part of the trial and could not be embraced in a motion for a new trial."

In Sternberg v. Levy, 159 Mo. 617, the trial court had sustained a motion to strike out a part of plaintiff's interplea. Plaintiff's exception to that ruling was preserved in the bill of exceptions, but not in a motion for new trial. This court said: "The plaintiff has properly saved the right to have the action of the trial court on the motion to strike out, reviewed by this court. No motion for a new trial was necessary to preserve this right." In 14 Ency. P. and P., p. 829, it is said: "Errors in ruling on demurrers and motions relating to the pleadings may be reviewed on exceptions without a motion for a new trial. Such errors of law are not grounds for a new trial." And on page 830 the same author says: "A motion for a new trial is generally not necessary to secure a review of decisions on motions rendered before or after the trial, but is required where the ruling is made during the trial. The

error of the law must be one pertaining to the trial of
an issue of fact."

The above mentioned cases show the condition
of the question as the decisions of this court have left
it, and we have gone through them for the purpose of
pointing out the doubt in our minds that led us to
granting a rehearing in this case.

But after all we will not decide that question
now, because it is not necessary to a decision of this
case, since it relates to that paragraph in the opinion
delivered at the last term which holds that the ruling
of a trial court on a motion to require the plaintiff to
make his petition more definite and certain is, when
the exception is properly preserved, reviewable on
appeal, as to which two of the judges of this Division
dissented and therefore there was as to that point no
decision. Besides, the point is now unimportant be-
cause the plaintiff's case was fully developed at the
trial.

Returning now to the case itself, we have discover-
ed no reason for changing our views expressed in the
opinion delivered at the last term which is as follows:

Defendant is a Missouri corporation operating a
railroad in this State; plaintiff was in its service in
the capacity of yard-master in its switch yard in Mi-
lan; his duties were, with the aid of other employees
under him, to switch cars and make up trains in that
yard; in attempting to couple an engine to a freight
car his foot got caught in the couplers and was crush-
ed; he sues for damages alleging that the accident was
the result of the defendant's negligence; he recovered
a judgment for $5,000 in the circuit court, and de-
fendant appealed.

There are two acts of negligence alleged in the
petition: first, that the engine furnished by the defend-
ant for use in the yards was not suitable for that pur-
pose and not equipped with reasonably safe appliances
for coupling; second, the engineer negligently ran the

engine against the cars where the plaintiff was to make the coupling, without having received from the plaintiff a signal to do so.

Before answering defendant filed a petition and bond to remove the cause to the Federal court, on the ground that it was engaged in interstate commerce, and that the action was bottomed on sections 1 and 2 of the Act of Congress entitled, "An act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes, and their locomotives with driving wheel brakes, and for other purposes," approved March, 1893. The petition for removal also alleged that the plaintiff had theretofore instituted a suit on the same cause of action in the circuit court of Sullivan county which, on petition of defendant, was removed to the Federal court and, when in that court, plaintiff moved to remand the cause to the State court on the ground that the Federal court had no jurisdiction of it, which motion was by the court overruled and thereafter plaintiff dismissed his suit in that court and instituted this suit in the circuit court of Grundy county. The circuit court of Grundy county denied the defendant's petition to remove, whereupon defendant caused a transcript of the record in this cause, as it stood up to that date, to be filed in the Federal court and thereafter this cause proceeded to trial in the State court.

I. It is now insisted by defendant that the State court lost its jurisdiction of the cause by reason of the petition and bond for removal to the Federal court, and since, if that contention is well founded, there will be no use in our looking any further into this record, we will give that point first consideration. If, on the record made, the defendant was entitled to the removal prayed, its right is preserved not only for

the purpose of review in this court, but also in the United States Supreme Court. It is not the order of a State court removing the cause that gives the Federal court jurisdiction, but it is the application for removal in the form prescribed by the act of Congress. If the petition for removal, read in the light of the pleadings in this case, shows a proper case for removal and the bond tendered is sufficient, it makes no difference what action the State court may take or that it take any action, the cause is rightfully in the Federal court.

But a Federal court has no jurisdiction of a suit between two citizens of the same State on a cause of action arising within the State and under the laws of the State. Such jurisdiction, it has never been claimed has been or could be conferred by an act of Congress even under the interstate commerce power. Nor can a defendant by his petition to remove change the plaintiff's cause of action to make it different from that stated in the plaintiff's petition, so as to bring it under the Federal law. Neither can a plaintiff so state his cause of action in his petition as to deprive the defendant of the right of removal if the defendant by his answer or plea shows that he relies for his defense on an act of Congress or a provision of the Federal Constitution. This we understand to be the interpretation given this law by the Supreme Court of the United States. [Colorado, etc., M. Co. v. Turck, 150 U. S. 138, l. c. 143.] The mere fact that a railroad company may be engaged in interstate commerce, does not deprive it of the right to engage also in intrastate traffic, or relieve it of its obligation to obey the law of the State while so engaged. If a merchant in St. Louis loads his wagon with goods to be shipped to Oklahoma and starts it to the railroad depot, there is as much reason for saying that the driver and the wagon and team are engaged in interstate commerce as there is in some other instances where it has been so consid-

ered, yet if the driver should so negligently manage the team as to run over a child in the street and kill it, the defendant could hardly claim the right to remove the cause to the Federal court on the ground he was engaged in interstate commerce while he was doing the deed complained of.

In the case at bar the plaintiff's petition does not state that the defendant railroad company is engaged in interstate commerce, and appellant complains that that was an intentional omission of a fact to defeat the removal, but if the petition had stated that fact it would not have affected the question of removal. The court will take judicial notice that all the trunk line railroads in the State are engaged in interstate commerce, but the court will also take judicial notice that they are also engaged in intrastate traffic, and if while operating its instrumentalities in this State a railroad company should violate a law of this State to the injury of a person in this State, the cause of action would arise under our State law, not under an act of Congress, and when that is the case the fact that the business of the defendant included interstate transportation is immaterial so far as the question of State or Federal jurisdiction is concerned.

The plaintiff's petition makes no reference to the act of Congress; it states a cause of action at common law that would be perfectly good if there had never been an act of Congress on the subject; it is bottomed on the law that requires a master to furnish his servant a reasonably safe instrument with which to work and on the State statute which makes the defendant company liable for the negligence of the plaintiff's fellow-servant.

Defendant does not undertake to frame a defense under the act of Congress; if it did, then, under the decision of the Supreme Court in the case last cited, there would be a case for removal, but defendant says that the plaintiff's cause of action is based on that

act, which, as we have already said, is not correct. It is argued on behalf of defendant that plaintiff's petition is skillfully drawn to avoid using terms that would give the Federal court jurisdiction yet enable the plaintiff at the trial to claim the benefit of the act of Congress. Whatever may have been the design, the petition states only a cause of action at common law and if at the trial the plaintiff was allowed to take benefit under the act of Congress, either in his evidence, his instructions or his argument it was error, but such error can be corrected on appeal. It does not go to the point of jurisdiction.

It is also argued that the Sullivan county case being based on the same cause of action and that case having been removed to the Federal court and the motion to remand having been there overruled the point of jurisdiction is *res adjudicata.*

There are some differences between the petitions in the two cases. The petition in the Sullivan county case looks very much as though the pleader had the mind to bring his case under the act of Congress, although that act is not mentioned by name. It states that the defendant was engaged in interstate commerce, which fact, under what we have already said, even if it was the intention to bring the suit under that act, was perhaps unnecessary because it was a fact of which the court would take judicial notice, yet it is a circumstance to show what the pleader had in his mind; and the petition also stated, which is more to the point, that it was the duty of defendant to have its cars equipped with automatic couplers that would couple by impact and that it failed to have such couplers and by reason of the failure the plaintiff was injured. There was at that time no law that required a railroad company to have such couplers except the act of Congress referred to; therefore the plaintiff pleaded that act. The plaintiff might have had a cause of action at common law and also one under the act of

Congress and, if he had both, he might have sued on either, or, having sued on one, he might have dismissed that one and brought suit on the other.  If in the first place plaintiff had brought his suit in the United States Circuit Court bottomed on the statute and had afterwards dismissed that suit and brought this one in the State court bottomed on the common law, his position would have been exactly as it is now.  The order of the Federal court overruling plaintiff's motion to remand the cause to the State court, if it was a final judgment on the question of jurisdiction, as defendant contends it was, it was so only in reference to that case which as we have said was different from this one.  After that order was made the plaintiff dismissed that suit, and defendant does not question his right to do so or contend that it barred another suit on the merits.

But what is more important still to observe in this connection is this, the question of a court's jurisdiction over the subject-matter is never settled until it is settled right.  If the Federal court has no jurisdiction of the subject-matter of this suit, the order of the court overruling the motion to remand the other suit, and plaintiff's dismissing that suit without appealing from that order cannot give the court jurisdiction.  Consent of parties cannot confer jurisdiction where the law has not conferred it.

We hold that the circuit court of Grundy county has jurisdiction to try this cause and did not err in refusing to order its removal.

II.  We turn now to a consideration of the case on its merits.  The petition states that plaintiff was in the service of the defendant as yardmaster in its yards at Milan and his duties were to assist in the switching of cars and making up trains, that the cars handled by defendant were and for a long time had been usually "equipped with couplers and coupling

apparatus designed and intended to couple with other couplers and coupling apparatus of others cars and engines to which they were to be, and it became plaintiff's duty to attach and couple the same; that it was the duty of defendant to furnish an engine for plaintiff to use in those yards that could with reasonable safety be used for that purpose, but defendant negligently failed to do so and instead furnished an engine wholly unsuitable, not properly adapted, equipped or provided as aforesaid for said uses and purposes and which had generally by all railroads been abandoned for such use and purpose; that said engine was not provided with coupler or coupling apparatus which would with reasonable safety and convenience, or could be with safety and convenience, coupled with said cars, and was not provided as it should have been with footboards upon the sides or end thereof upon and for which plaintiff was to stand in the discharge of his duties; that it was a road engine, not a switch engine; that by reason of the defect when the engine came to couple to the car it failed to couple and it became necessary for plaintiff to go in between the engine and the car to effect a coupling and while he was there the engineer negligently, without signal to come, moved the engine on with great force and caught the plaintiff's foot in the jaws of the coupler and crushed it.

Before answering, defendant filed a motion to require the plaintiff to make his petition more definite and certain, first, as to the supposed defects in the engine, and second, as to the conduct of the engineer; the motion was overruled and defendant excepted and the exception is duly preserved in the bill of exceptions. After the overruling of the motion and the preserving of the exception, defendant filed its answer to the merits.

The first question on this motion is, was the exception to the overruling the motion to make the peti-

tion more definite and certain waived by the filing of the answer? There are three decisions of this court that seem to answer that question in the affirmative, but it may be doubted if it was a question seriously in dispute in either case. [Sauter v. Leveridge, 103 Mo. 615; State ex rel. v. Bank, 160 Mo. 640; Dakan v. Chase, 197 Mo. 238.]

The first of those cases was a suit on two promissory notes, the original petition being in one count; a demurrer to it was sustained, then the plaintiff filed an amended petition in two counts alleging in each that the note sued on was lost. Defendant filed first a general demurrer which was overruled, then a motion to strike out the amended petition which was overruled, then a motion to make more definite and certain as to the time when the notes were lost, which was also overruled. Glancing at the briefs in that case we see no reference to the motion to make more definite and certain. The counsel seemed to treat it, as well they might, as frivolous; the appellant on that part of the case complained only of the overruling of his motion to strike out the amended petition and respondent said that if there was error in that ruling it was waived by pleading to the merits. The only discussion of that part of the case in the opinion relates to the motion to strike out, and after that discussion is ended and cases cited the court adds: ''The same rule applies to the motion to make the petition more certain. Bliss on Code Pleading, 425a.'' That is all there is in that case on that point, and if we go to the authority cited we find that it does not sustain the proposition, but is rather to the contrary. In section 425, Bliss on Code Pleading, the author quotes our statute, showing that the court may cause the pleading to be made more definite and certain by amendment, then he refers to other code states where the statute authorizes the court to strike out a pleading that is indefinite and uncertain or else the fault may be made the ground for demurrer.

Then in the next section, 425a, the author proceeds to show how the different decisions and *dicta* in the different states may be reconciled; that is, *inter alia,* a pleading may be so uncertain and indefinite that facts sufficient to constitute a cause of action cannot be gathered from it, or a petition may contain statements of evidence which ordinarily should be stricken out as redundant, but if it contain nothing else and there would be no substantial pleading left if those statements should be stricken out, then the author says they should not be stricken out, and he concludes the subject by saying: "The only remedy, then, must be to move for an order to make the pleading more definite and certain—an efficient remedy for slovenly, ambiguous and argumentative statements." If that is the only remedy a party has to apply to a material feature of his defense, and if he has done his best to avail himself of that remedy and the right has been denied him, what justice is there in saying that he must abandon his right to have that adverse ruling reviewed by the appellate court or else abandon all further defense at that stage and leave his adversary master of the field?

In the second case above referred to, State ex rel. v. Bank, 160 Mo. 640, there was a motion to make the petition more definite and certain, but it was treated with indifference by appellant and no argument was made in its defense. The following is all that appellant said in its brief on the subject: "The motion to make the petition more definite and certain was certainly well taken and it is unnecessary to argue this point, as it speaks for itself. But the vital point in the case is the assessment." The case being presented by appellant in that way the court without going into an investigation and without discussion said that the filing of the answer and going to trial on the merits was a waiver of the motion.

In the third case cited, Dakan v. Chase, 197 Mo. 238, what was said on this subject was *obiter dictum,* because as said in the opinion in that case, the motions and the exceptions were not preserved in the bill of exceptions on which the case came here. The writer of this opinion feels less hesitancy in criticising what was said in the opinion on this point in that case because he wrote that opinion himself.

Although, therefore, it appears that we have said in those three cases that the filing of an answer is a waiver of the exception to the overruling of a motion to make more definite and certain, yet upon an examination of them we see that the point was not seriously contended, for there was no discussion of the subject; therefore we ought not to hesitate to enter into a consideration of the question as though it was a new one.

The reason for our ruling in case of an overruled demurrer has no application in a case of an overruled motion to make more definite and certain. When the demurrer is overruled everything of substance, as contradistinguished from matters of form and convenience, is preserved to the end and is subject to review in the appellate court, but in an overruled motion to make more definite and certain nothing is preserved, if it is not preserved in a bill of exceptions.

We say that filing an answer after a demurrer to a petition is overruled waives every objection that the demurrer could make to the petition except that the court has no jurisdiction of the subject or that the petition does not state a cause of action, and our reason for that is that all else reached by the demurrer is non-essential or does not deprive the defendant of any defense. That the plaintiff is a minor, that there is another suit pending on the same cause of action, that there is a defect of parties, that several causes of action are improperly united, that a party named in the petition is not a necessary party—all these are

really non-essential in the sense that they do not prevent the defendant from knowing exactly what he is sued for or from making his defense. But not so when a petition is so vague and indefinite that defendant does not know what he is to answer.

It is the duty of a plaintiff to state his case with such clearness and definiteness that his adversary may know exactly what the complaint against him is. Our statute says the petition must contain "a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition." [Sec. 592, R. S. 1899; Ann. Stat. 1906, p. 612.] That duty devolves on the plaintiff and it is one that appeals to our sense of justice and fair play. There are no words in the Code of Civil Procedure more significant of the spirit which actuated its authors than the words just quoted. The requirement is that the facts be stated, not mere conclusions of law. If the servant complains that his master furnished him a defective implement he must state in what respect it was defective, unless it is a case in which the thing speaks for itself. In Sidway v. Missouri L. & L. Co., 163 Mo. 342, l. c. 375, the court said: "The theory of our code is that the *facts* in a pleading are constitutive, and in order to be proved must be alleged. [Pier v. Heinrichoffen, 52 Mo. 333.] Every substantial fact which the plaintiff in order to recover must prove, he must also allege so that an issue can be made thereon. [Lanitz v. King, 93 Mo. 513.]"

In close connection with the section above quoted follows section 612, in which it is declared: "And when the allegations or denials of a pleading are so indefinite or uncertain that the precise nature of the charge or denial is not apparent . . . the court may require the pleading to be made definite and certain."

In an early case, discussing the above provisions of the code in their application to an answer filed in

the case, the court said: "The object of the present practice act was to introduce truth and simplicity in pleadings." And again the court said: "The parties cannot expect to obtain an advantage by evasive pleading. If the pleading is insufficient, it ought to be disposed of before going into trial. . . . Indeed, the failure or neglect of the inferior courts to comply with the plain requirements of the statute renders it almost impossible to do anything with the practice act now in force." [Atteberry v. Powell, 29 Mo. 429.]

Thus we see how important the law-maker regarded this point and how important this court has regarded it. The motion to make more definite and certain is the only remedy the opposite party has against a pleading that is so evasive and indefinite as to leave him in the dark as to what issue he must prepare to meet, and if the trial court erroneously overrules the motion, that remedy is lost unless he abandons the case at that point and allows his adversary to take judgment. Is there any justice in that? The appellant may bring us a record showing that the pleading of his adversary failed to comply with that important requirement of the statute, that he resorted to the method pointed out by the statute for relief, that the trial court erroneously overruled his motion, that submitting, as he was compelled to do, at his peril, to the erroneous ruling, he went to trial in the dark and issues were sprung on him that ought to have been tendered in the pleading, yet we say we will give no relief. How can we say that an error materially affecting the merits of the case was committed and the exception was preserved in the manner provided by law and the injury can be remedied in no other way, yet we will not hear it? Such ruling not only places a party at the mercy of the trial court, but its tendency is to belittle the motion and it does not stimulate care in considering it.

This court, in Melvin v. Railroad, 89 Mo. 106, in a

short *per curiam* memorandum, reversed a judgment of the kind just supposed, and said it was error to have overruled the motion to make more definite and certain. If the overruling of such a motion was error and the party aggrieved has no other remedy why should we not correct the error? To correct error which cannot be elsewhere corrected is what this court was created for.

We have no fault to find with what we said in Sauter v. Leveridge, 103 Mo. 615; State ex rel. v. Bank, 160 Mo. 640; Dakan v. Chase, 197 Mo. 238, concerning any of the questions seriously in dispute in those cases; but what was said to the effect that filing an answer and going to trial after the overruling of a motion to make more definite and certain is a waiver of the error, if any, in such ruling, does not, on mature consideration, meet our approval and should not be followed.

The motion to require the plaintiff to make his petition more definite and certain should have been in part sustained or, if overruled altogether on the ground that in part it was sufficiently specific, the order of the court should have so indicated, so that the issues to be tried should be limited to those specifically tendered. The petition was sufficiently specific in charging negligence on the part of the engineer, whose duty it was to hold the engine until he received a signal from the plaintiff to come forward, yet who, the petition said, came on without signal. The petition is also specific enough in saying that the engine used was defective in the fact that it did not have footboards on the sides for the switchman to stand on. Therefore, the plaintiff had the right to prove, if he could, that he was injured through the specified negligence of the engineer or because of the absence of the footboards, but he did not try his case on either of those theories. There was evidence tending to show that the engineer was negligent in the respect specified, but the plaintiff

did not ask an instruction that entitled him to recover for that negligence; the only reference to the engineer's alleged negligence in plaintiff's instructions was on the question of plaintiff's contributory negligence. There was evidence tending to show that there were no footboards on the sides of the engine, but there was no evidence tending to show that the absence of the footboards had anything to do with the accident.

The theory on which the plaintiff tried his case was that the engine was unsafe because it had a defective coupler, and that is the theory on which he gained his verdict, but the petition does not specify in what respect the coupler was defective, and the motion to make more definite and certain called for such specification. The petition states that it was a road engine, whereas it should have been a switch engine, that it was not adapted to such use, that the coupler on it was not "reasonably safe and convenient" to be used in coupling cars for switching purposes, that the engine was wholly unsuitable for such purpose. To say that the engine was unsuitable and that the coupler was unsafe is but to state a conclusion; it is not a "plain and concise statement of the facts constituting a cause of action." Why was the engine not suitable? In what particular was the coupler defective? The insufficiency of the petition in these particulars is clearly illustrated by the facts of this case; the point on which the case seemed at last to turn was that in the coupler on the engine there was not as much lateral movement as in another kind of coupler in general use. Counsel for plaintiff at the trial said that he had himself just been informed of that defect. If plaintiff thought that that was a defect and defendant was to be held liable in damages therefor, what justice was there in not requiring the plaintiff to state in his petition the fact on which he relied?

The ruling of the court denying the plaintiff's motion to make more definite and certain and allowing

the case to be tried on the vague and indefinite state-
ments as to the insufficiency of the engine, was error.

III. In his opening speech at the trial the attor-
ney for the plaintiff stated that there were two special
causes of negligence alleged in the petition: one the
drawhead or coupler of the engine, the other the act
of the engineer putting the engine in motion without
a signal for him to do so. Whilst the testimony was
quite voluminous and wandered sometimes from the
real issues, yet in the main it was directed to the issues
mentioned by the attorney and chiefly to the character
of the coupler.

The testimony for the plaintiff tended to show
as follows: Plaintiff was, as stated in the petition,
yardmaster in defendant's switch yard at Milan, or,
as stated by him in his testimony, foreman of the
engine, by which term we understand he meant that
the engine should move only on his signal. His duties
were to attend to the switching of cars and making up
of trains, he was foreman of the switching crew. He
had been in the service of the defendant in this capac-
ity at this place about six or seven months prior to the
accident. The engine furnished by defendant for switch-
ing purposes in that yard was not a regular switch
engine but was a road engine. A part of the time
tiff's witnesses, over defendant's objection, that a road
engine. There was opinion testimony of one of plain-
tiff's witnesses over defendant's objection that a road
engine was not suitable for or adapted to switching.
He stated that the engine in question was reasonably
safe for the purposes for which it was being used, but
was not as safe as a switch engine and not adapted at
all for switching. Plaintiff himself testified that when
the switch engine was in the yard they used it in
preference to the road engine *"because it was more
convenient, better to work with."* Nearly all the cars
coming into defendant's yards were equipped with an

automatic coupler called the Tower coupler, which was a later invention than the Leeds coupler and had come into general use by nearly all railroads in preference to the Leeds. The difference in the mechanisms of the two couplers was described in the evidence. The engine that was in use in this instance was equipped with a Tower coupler on the rear end and a Leeds on the front end. The Tower coupler was so contrived that it would couple automatically by impact with another coupler of the same kind or with a Leeds, but the Leeds would not automatically couple with another Leeds because it had a solid case head that did not open to receive the knuckle of the other. All of the plaintiff's witnesses on this subject but one testified that the Leeds was an automatic coupler, and that one said he did not so consider it, because whilst it would couple automatically with other standard couplers it would not so couple with one of its kind. Two Tower couplers would not couple automatically by impact unless the jaws of one were open and those of the other closed and if the jaws of a Tower were open a Leeds would couple with it as effectually as with another Tower. One of the plaintiff's witnesses explained that if there had been a Tower coupler on the front end of the engine the switchman could have opened the jaws of it while standing on the front footboard. But that fact could have had no influence in this accident, because in order to make the coupling, even if it was with two Towers, it was necessary to have the jaws of one open and those of the other closed. If both were open they would not couple. In this instance the jaws of the coupler on the car were already open, therefore if it had been a Tower instead of a Leeds on the engine the switchman would not have opened it, but would have left it with a drawhead as rigid as that of the Leeds.

The accident occurred in the effort to couple the Leeds, which was on the front end of the engine, with

a Tower, which was on a car to be switched; the jaws
of the Tower, as already said, were open to receive
the drawhead of the Leeds, and the engine, under the
direction of the plaintiff, moved forward to make the
connection, but it so happened that that end of the
car was on a curve leading from the main track, on
which the engine was moving, to a sidetrack, on which
the car was standing, and that condition threw the
two couplers a little out of line with each other and
therefore when the two bodies came together the Leeds
coupler struck to one side of the Tower and they failed
to unite.  Then, according to the plaintiff, he got off
of the footboard of the engine where he was riding
and signaled to the engineer to back, and when the
engine had backed, plaintiff went to the end of the car
and endeavored to shove the Tower coupler with his
hand into position where it would be in line with the
Leeds, but not being able to shove it with his hand he
attempted to do so with his foot, and he placed his
right foot on the inside of the Tower's jaws, standing
on his left leg, and while in that position the engine
came without signal and by the impact the Leeds
coupled with the Tower and caught the plaintiff's
foot and crushed it.

Thus far there is nothing in the evidence tending
to show that the appliances furnished were not reason-
ably safe when handled with ordinary care.  The road
engine was not as convenient or as well adapted to
switching work as an engine made for that purpose,
but however clumsy or inconvenient the implement
may be, the master is not to blame if it is reasonably
safe.  The law does not hold the master liable for not
providing for the convenience of his servants if he ex-
ercises reasonable care to provide for their safety.
The master complies with all that the law requires
when he uses reasonable care to provide for the safety
of his servants, the care required varying in degree
according to the character of the business, that is, what

would be reasonable care in a business involving little danger might not be so esteemed in another business involving great danger, but the standard of measurement is reasonable care for the safety of the servant under the circumstances. [Huhn v. Railroad, 92 Mo. 440; Blanton v. Dold, 109 Mo. 64; Friel v. Railroad, 115 Mo. 503; Steinhauser v. Spraul, 127 Mo. 541.] We find the term "suitable appliances" used by the law-writers, but "suitable" in that connection means compatible with safety. Some of the plaintiff's witnesses said that a road engine was not suitable for switching, and that was evidently correct in a certain sense, but none of them said it was not reasonably safe; the plaintiff himself only said that the switch engine was more convenient. This engine had been used there for a long time and it had performed the work of a switch engine with reasonable safety. Whilst some of the witnesses were allowed to express the opinion that it was not suitable, yet none of them ventured to show in what way it was not safe. It would not require a very learned expert to be able to say that a road engine was not as suitable for switching purposes as a regular switch engine—every man of common experience knows that — but when that is said it is far from saying that a road engine cannot be used for switching cars with reasonable safety when handled with ordinary care. No witness in this case said so.

This engine as equipped, would have effected the coupling automatically by impact if the coupler on the car had been in line with it; the only reason for the failure was that the car was on a curve. The plaintiff was the master of the operation, the jaws of the Tower coupler on the car had been opened by him or under his supervision to receive the Leeds drawhead, and he could have adjusted it to do so at the same time he opened the jaws if he had observed the situation, but he overlooked the fact that the end of the car was on a

curve and therefore his first attempt to couple was a failure. Who was to blame for that? Certainly not the Leeds coupler.

A great deal was said in the course of the trial about the desirability of having couplers that would not require the switchman to go between the cars, borrowing in that respect the language of the act of Congress regulating interstate commerce, but whilst the act of Congress had nothing to do with this case, yet, even if it had, this Leeds coupler did not require the plaintiff to go between the cars. The jaws of the Tower coupler could be opened by a device of its own without going between the cars, and when open and in line the Leeds would couple by impact. But it is said that the Tower coupler has a lateral movement; that is, it may be moved three or four inches to the right or left and thus bring it in line with the coupler with which it is aimed to unite, whereas the Leeds has a lateral movement of only about an inch and a half, and the argument is that if there had been a Tower coupler on the front end of this engine the plaintiff could have stood on the footboard of the engine and have shoved it to one side and thus have brought it into line; and the plaintiff's whole case, as far as it is bottomed on a defect of engine, was reduced to that point and on that point he went to the jury and obtained his verdict. But that defect, if defect it was, was not pleaded in the petition and if it was known to the plaintiff and considered by him a defect, he did not mention it to his counsel, because as the counsel himself said at the trial, it had just then come to his knowledge. But suppose it had been pleaded and suppose it was a defect that might have caused an accident, the vital question still remains, did it have anything to do in causing this accident?

The aim was to couple the Leeds coupler on the front end of the engine with the Tower coupler on the end of the car. The engine came forward under plain-

tiff's direction to make the coupling, the plaintiff riding, as he now claims, on the pilot of the engine. When the contact came the effort to couple failed because the couplers were not in line. Then the plaintiff gave the engineer the signal to back and when the engine had backed plaintiff got off the engine and walked to the car and undertook to adjust the coupler by shoving it with his foot; then the engine came and caught him. When the plaintiff was coming forward standing on the pilot of the engine he expected the coupling to be made by the impact when the coupler on the engine should strike that on the car, and it was not until the contact had come and the failure to couple had resulted that the plaintiff discovered the necessity of a lateral movement of one coupler or the other; then he got off the engine and went to the car. If there had been a Tower coupler on that end of the engine the plaintiff would have had the choice of moving either that one or the one on the car and he might have chosen the one or the other, but the purpose would have been served as well in moving the one as the other. If the alleged defect in the Leeds was obviated by the presence of the Tower, where was the danger in having a Leeds? If the coupler on the engine had been a Tower instead of a Leeds and plaintiff had choice which he would move, it is not difficult to imagine why he would have preferred to stand on the ground to move the coupler on the car rather than to stand on the footboard of the pilot of the engine to move the other, especially if the engine was moving and more especially if it was necessary for him to use his foot in the operation which would involve standing on one leg. But however that may be, the plaintiff makes out no case of negligence on account of the lack of lateral movement in the Leeds when there was a Tower at hand to perform the same service.

In the first instruction given for the plaintiff the

jury were authorized to find for the plaintiff if they
found that the coupler attached to the engine was de-
fective "by reason of not having sufficient lateral play
or movement to enable it to conform to the other
couplings to which the same was undertaken to be
coupled," and if the plaintiff's foot was "caught and
crushed solely by reason of such defective coupler
on said engine without any contributory negligence on
the part of the plaintiff," etc. It was error to sub-
mit the case to the jury on that issue.

IV. The plaintiff, as has been pointed out in a
preceding paragraph of this opinion, first brought his
suit based on the act of Congress therein mentioned
and that cause having been removed to a Federal court,
plaintiff, preferring to sue in a State court, dismissed
that suit and brought this one founded on the com-
mon law, which he had a perfect right to do and no
criticism of his action in that particular is intended.
The plaintiff's learned counsel were very careful to
avoid saying anything in their pleading in this case
that could give any ground for calling this an action
under the act of Congress and, since they preferred
the State court as they had a right to do, they were
wise in so carefully shaping their petition. But hav-
ing put themselves altogether outside of the act of
Congress in their pleading, they ought to have re-
mained outside in their evidence and their arguments
before the jury.

The act of Congress requires railroads engaged
in interstate commerce to use automatic couplers that
will couple by impact without requiring switchmen to
go between the cars. Whilst the Leeds coupler, as it
was being used in the case now before us, was an auto-
matic coupler and did not require the switchman to
go between the cars, yet, because it would not couple
automatically with one of its kind, it did not measure
up to the standard prescribed by the act of Congress.
But an act is not *per se* negligence at common law

because it fails to meet the requirement of a statute. Failure to sound the whistle at a crossing is not negligence *per se* at common law, but is so under our statute. Failure to place a guard over machinery is not negligence *per se* at common law, but is made so by statute under certain conditions. So, although the Leeds coupler may have come under the ban of the act of Congress, yet unless it could be shown to have not been reasonably safe for the uses to which it was put, it furnished no cause of action for the plaintiff in this case.

Sometimes the fact that a particular mechanical device which had been in general use but had been generally abandoned in favor of another mechanism is significant of the idea that the former was abandoned because the latter was found to be safer, and in such case evidence of the general abandonment is competent on the question of safety, but unless the evidence shows or the circumstances indicate, that it was abandoned for that reason, it is not competent and the jury should not be instructed to consider it. Many mechancial devices that at one time were in popular favor have been generally abandoned because later inventions are more efficient, that is, will produce more for the same amount of investment. This is as true of railroad equipments as it is of manufacturers. Even the air-brake, whilst it is perhaps safer than the old fashioned hand instrument, yet has its economic characteristics that commend it to men whose chief aim in business is financial success.

All the trunk line railroads in the country are engaged in interstate commerce and they must all conform to the acts of Congress passed in pursuance of the Federal Constitution on that subject, therefore it is easy to account for the fact that nearly all, if not all, the railroads in the country have abandoned the Leeds coupler; since the passage of that act of Congress they have abandoned it because it has been considered as

condemned by the act of Congress. But that does not justify a court while trying a cause of action arising under the common law, in instructing the jury that if the evidence shows that the Leeds coupler had been generally abandoned, without anything to show why, they may take that fact into account in determining whether or not it was safe. But that is what the court did in the second instruction given at the request of the plaintiff.

One of the plaintiff's witnesses was an inspector of safety appliances for the Interstate Commerce Commissioners, and one reading his evidence cannot fail to see that all his opinion evidence was derived from the standpoint of his official connection with the Interstate Commerce Commissioners and the act of Congress under which he held his office. In spite of the objections on the part of the defendant and rulings of the court sustaining the objections, this witness was constantly (and perhaps unconsciously) conveying to the jury the idea that the Leeds coupler had been condemned by the act of Congress, for example: "Q. What has become of that coupler (the Leeds)? A. All railroads are doing away with that and adopting automatic couplers. Q. For what reason? A. Because the law makes them." There was, of course, no law but the act of Congress so requiring, and the court should not have allowed that evidence to go in; but the court not only allowed it but instructed the jury in the second instruction that if the railroads in the country had generally provided their switch engines with automatic couplers that would couple by impact without the necessity of going between cars, and if the "Leeds coupler" (by name in the instruction) had generally been abandoned, "and was not reasonably safe, suitable and adapted" for switching purposes and the other kind was easily accessible and obtainable, then it was the duty of defendant to have discarded the Leeds and obtained the other kind.

Not only was the requirement of the act of Congress and the failure of this coupler to meet that requirement carried by the evidence of this witness to the mind of the jury, but counsel for the plaintiff in their arguments were unable to restrain themselves within their common law lines. Several times the defendant objected to their remarks and the objections were sustained, but it did no good—the thought was planted in the minds of the jury and could not be eradicated by the court's merely sustaining the objections. It sometimes happens that a trial judge is conscious that a cause on trial has drifted away from his control and is decided against his rulings, and when that is the case he has but one course of duty, that is, to set aside the verdict.

For the reasons above stated the court erred in giving the second instruction for the plaintiff. Instruction three for the plaintiff contained the same infirmities as above mentioned in instruction two and it also should have been refused.

V. There was evidence tending to show that it was the duty of the engineer to hold the engine in place after the first effort to make the coupling had failed, until he received a signal from the plaintiff to come on, and that he neglected to observe that duty but came on without signal. The testimony on that point was conflicting but still there was sufficient to entitle the plaintiff to go to the country on that issue. That question was not submitted to the jury in a form that authorized a recovery if decided in plaintiff's favor. On a retrial the plaintiff will be entitled to have that issue presented to the jury.

The judgment is reversed and the cause remanded to be retried according to the law as herein expressed.

*Lamm, P. J.,* and *Woodson, J.,* concur in all except paragraph II, as to which their views are expressed in the dissenting opinion of *Lamm, P. J.*

*Graves, J.,* concurs in all except that in his opinion an exception to the overruling of a motion to make a petition more definite and certain is not preserved unless it is assigned for error in the motion for a new trial.

## DISSENTING OPINION.

LAMM, P. J.—No system of jurisprudence can be so wise and all-embracing that hard cases cannot be put in matters of practice. Might it have been better to allow appeals from orders overruling motions to make more definite and certain, or to strike out? Much can be said against that plan because it would clog the machinery of justice and breed delay. Now, delay tends toward a denial of justice. Justice shall be administered without delay, said the Great Charter and so says our Constitution. Experience taught, we have reached the settled rule of practice that joining issue on the merits is a waiver of interlocutory rulings on motions and demurrers, except where the petition does not state a cause of action or there is a lack of jurisdiction of the subject. We should stand by that rule; for we have said so so often that the profession understands our position. If we unsettle the rule the door is opened wide for confusion to come in—certainty being of the very essence of good law. If the rule inherently and necessarily tended to injustice in the end, it would be different. But it will be found to rarely, if ever, so result.

(a) Take the case of a motion to elect. If causes of action are commingled which contradict each other, and are self-destructive through repugnancy, the point can be saved after answering, for in such case the petition does not state a cause of action. [White v. Railroad, 202 Mo. l. c. 562; Jordan v. Railroad, 202 Mo. l. c. 426-7.] Or if such repugnant causes go to

the jury and a general verdict comes in, a motion in arrest lies. Or if there is no repugnancy and the evidence sustains the whole charge, what injury is done if the jury be properly instructed?

Take another case. If the petition commingle good with bad causes of action and a motion to strike out, or to elect, or a demurrer on that score is overruled and a general verdict comes in afterwards for plaintiff, the defendant ultimately suffers no wrong because a motion in arrest lies. [Mooney v. Kennett, 19 Mo. 551; Christal v. Craig, 80 Mo. l. c. 371.]

Take the case of a motion to make more specific and certain. If it be inadvertently overruled and issue is thereafter joined by answer and if the petition states a cause of action at all, the interest of defendant may be guarded in the introduction of testimony, or in instructions, or if, on the trial to the merits, a just result has not been reached, justice can be attained in the trial court by sustaining a motion for a new trial. Therefore, in the long run, no harm is done.

If however, a defendant refuse to stand on his motion to make more specific (lacking faith, maybe), but answers over and invokes and takes his chance of winning or losing on a trial on the merits, that chance, so invoked and taken, waives his motion by abandoning it, and heals the error, if any, in overruling it. Otherwise a court becomes a place of gambling on chances, and the time and expense of a trial are wasted if on appeal we lose sight of the very judgment appealed from, cutting behind it (though it may have been rendered on a fair trial free from error) and treading back and tripping up a respondent's heels on an interlocutory ruling not affecting the merits of the judgment a whit. To overturn a verdict and judgment in that way is not in accord with our practice act. [R. S. 1899, secs. 865, 602.]

My learned brother's opinion explodes, it seems to me, the doctrine of a line of cases, if we rule as he

has written.  For example:  White v. Railroad, *supra;* Jordan v. Railroad, *supra;* Ewing v. Vernon Co., 216 Mo. 681; O'Brien v. Railroad, 212 Mo. l. c. 69 *et seq.;* Scovill v. Glasner, 79 Mo. 454 *et seq.;* Paddock v. Somes, 102 Mo. l. c. 235; McMillen v. City of Columbia, 122 Mo. App. 34.  See also the cases criticised by him.

Therefore, I dissent to paragraph two of the opinion.

(b)  Moreover in this case the attention of the trial court was not called by the motion for a new trial to the error, if any, in the ruling on the motion to make more specific.  Such motion for a new trial, as its name indicates, assembles the reasons and grounds for a new trial and presents them to the trial judge anew in order that he may have one last chance to heal his own errors by opening the case to be heard without error.  Under our practice act all motions must specify the grounds the movent relies on.  If the ruling on the motion to make more specific was such ground, then it should have been so stated in the motion for a new trial.  If it was not such ground it need not be stated, but if it was no such ground *below,* it is no such ground *above.*  If a ruling on a motion to make more specific need not be challenged in the motion for a new trial, then, by the same token, rulings on continuances, applications for changes of venue, motions to strike out, motions to suppress depositions, motions for judgment on the pleadings, or for this, that or the other thing, need not be challenged in the motion for a new trial, but all of them come here for review though abandoned by that motion.  I do not agree to that.  Since, then, by discussing the motion to make more specific in paragraph two of his opinion, my Brother necessarily assumes it is here to discuss, it would seem the opinion by implication will mean to the profession that such motion gets here

though the ruling *nisi* be not challenged by the motion for a new trial.

Therefore, I dissent to such apparent inferential holding.

In all other respects I concur. *Woodson, J.*, agrees with these views.